**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION
| | |
|---|---|
| CHARLES DAVIS, | |
| Plaintiff, | |
| v. | CV 105-189 |
| INTERNATIONAL PAPER COMPANY, | |
| Defendant. | |

## ORDER

In the captioned case, Plaintiff alleges that Defendant denied him long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. (Compl. ¶¶ 1, 3-6.) The matter is before the Court on Defendant's motion for summary judgment. Upon the following, the motion is **GRANTED**.

### I. BACKGROUND

Plaintiff worked at Defendant's Augusta Mill until September 30, 2003, when he fell from a ladder while painting his house, breaking his right leg and left wrist. (Barger Aff. Ex. B at 19.) As an employee of Defendant, Plaintiff was eligible to apply for long-term disability benefits under an employee welfare benefits plan ("the plan") sponsored by Defendant and governed by ERISA. (Barger Aff. Ex A at 16.) Plaintiff received short-term disability benefits through June 29, 2004. (Barger Aff. Ex. B at 4.) On June 18, 2004, he

applied for long-term disability benefits. (Id.)

On January 19, 2005, Defendant denied Plaintiff's claims; however, it was not until February 3, 2005 that Defendant notified Plaintiff of its decision. (Id. at 8, 90-91.) Plaintiff appealed the denial of his claim, which appeal was subsequently denied on June 30, 2005. (Id. at 13.) Defendant notified Plaintiff of its final decision via letter dated July 6, 2005. (Id. at 104-05.)

The plan offers the following somewhat tautological definition of disability:

> "Disability" means, unless otherwise defined in a Benefit Schedule,[1] a disability to the extent a Participant is permanently disabled by bodily injury or disease from performing the normal duties of his position, as determined by the Plan Administrator or his designee based on competent medical evidence satisfactory to substantiate such disability.

(Barger Aff. Ex. A at 16.) Of particular note, Benefits Schedule A-1, which governs the benefits available to workers at the Augusta Mill, provides a different definition of disability:

> "Disability" or "Disabled" means a total disability which is a medically determinable physical or

---

[1] The plan defines "Benefit Schedule" as follows:

"Benefit Schedule" means one of the Benefit Schedules that are annexed to and form a part of the Plan specifying Accrued Benefits and Plan provisions applicable for specific groups of Employees. To the extent the terms of a Benefit Schedule and this Plan conflict, the Benefit Schedule shall control. Except as provided specifically in a Benefit Schedule, the provisions of the Plan shall apply to the payment of benefits.

(Barger Aff. Ex. A at 14.)

2

mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or employment for which the Participant is qualified by education, training or experience and which is likely to be permanent during the remainder of the Participant's life, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the Participant is Disabled.

(Barger Aff. Ex. A at 88.)

Claims under the plan are administered and decided by Defendant's "Office of the Plan Administrator." (Barger Aff. ¶¶ 2-5.) In other words, Defendant "is solely responsible . . . for controlling and managing the operation and administration of the Plan."[2] (Barger Aff. Ex A at 53.) In this regard, the plan grants Defendant discretionary authority as administrator to determine eligibility for benefits and to interpret the terms and provisions of the plan. (See id. at 54-55.)

Despite its dual role as employer and fiduciary, Defendant argues that it does not operate under a conflict of interest because the plan's funds belong "to a separate trust to which [Defendant] does not have access for any purpose other than funding and administering claims for benefits pursuant to the Plan." (Def.'s Statement of Undisputed Facts at 3 (citing Barger Aff. Ex. A at 48).) Furthermore, under the plan, Defendant is required to make periodic, irrevocable

---

[2] Of note, although Defendant has hired Wassau Benefits, Inc. to "assist" in administering the plan, all disability determinations are ultimately made by Defendant. (See Barger Aff. ¶ 7.)

3

payments into this "separate trust" for disability benefits. (Id.)

In initially denying Plaintiff's claim, Defendant relied upon the following evidence: (1) an October 4, 2004 "Functional Assessment" in which Dr. Larry Carter, M.D., Plaintiff's treating physician, opined that Plaintiff could perform sedentary work; (2) an October 21, 2004 report from Dr. Carter opining that Plaintiff could perform light-duty work; (3) a September 21, 2004 evaluation by Dr. Sean T. Lynch, D.O., who examined Plaintiff and opined that he could perform sedentary work; (4) the November 11, 2004 opinion of Dr. Bernice Stein, M.D., who conducted an independent review of Plaintiff's medical records and concluded that he was not disabled; and (5) the December 28, 2004 opinion of Dr. John M. Downey, D.O., who performed a consultative medical examination of Plaintiff at Defendant's request and concluded that Plaintiff was capable of sedentary work. (Barger Aff. Ex. B at Davis 43-44, 46-47, 50, 56, 66-69, 76-77.)

In denying Plaintiff's appeal, Defendant relied (in addition to the evidence discussed above) upon: (1) an initial denial of disability benefits by the Social Security Administration;[3] and (2) a second independent medical review conducted by Dr. Joseph Packman, M.D., Ph.D., who opined that

---

[3]The record does not reveal whether Plaintiff has exhausted his administrative remedies with the Social Security Administration--e.g., by seeking review of the denial from an administrative law judge.

4

Plaintiff was not disabled. (Id. at 3, 6, 8, 13, 173-74, 177.)

Plaintiff argues that Defendant's disability determination was wrong because it failed to account for the fact that Plaintiff has no job skills which are transferable to a sedentary job. Plaintiff also points the Court to ample evidence in the record demonstrating that he can no longer perform his previous job, an issue not in dispute. In Plaintiff's view, this proof entitles him to disability benefits absent a showing that he has "education, training, or experience" suiting him for another job. Thus, Plaintiff contends that Defendant's denial of benefits fails for lack of vocational evidence. Of note, Plaintiff does not argue that he is, in fact, physically incapable of sedentary employment activities.

In response, Defendant contends that vocational evidence or evaluation was unnecessary, and that Plaintiff has misapprehended his burden under the plan to show total disability. Also of note, Defendant points out that Plaintiff has a high school diploma and that his work required him to read, write, use a computer, and perform basic mathematical calculations--all skills which are transferable to sedentary occupations. (See Def.'s Statement of Undisputed Facts at 4.)

## II. REQUIREMENTS FOR SUMMARY JUDGMENT

The Court should grant summary judgment only if "there is

5

no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, . . . no reasonable jury could find for the non-moving party." Four Parcels, 941 F.2d at 1438. On the other hand, if the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways--by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)

6

(explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If--and only if--the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. Anderson, 477 U.S. at 249. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact,

the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed. R. Civ. P. 56.[4]

### III. DISCUSSION

#### A. Definition of Disability

As the Honorable Dudley H. Bowen, Jr., United States District Judge, noted in his January 11, 2007 Order, a key issue in this case "is whether Plaintiff was aware, or should have been aware, that his application for disability benefits would be subjected to Schedule A-1's stringent 'any occupation' standard, rather than the more lenient 'normal duties' standard provided by the plan's general definition of disability." (Jan. 11th Order at 2-3.) In order to

---

[4] The Clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. no. 16.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

8

facilitate resolution of this issue, Judge Bowen invited the parties to file supplemental briefing. The Court is now in receipt of the parties' briefs and the issue can be resolved.

Defendant has presented evidence that on July 31, 2003, it sent Plaintiff a "summary plan description" ("SPD") which apprised him of the "any occupation" definition of disability. (See Aenchbacher Dec. ¶¶ 3-4.) The 2003 SPD stated that, in order to be considered disabled, a claimant must be unable to perform "any employment." (SPD at 6.) The SPD also informed Plaintiff that it was only "intended to help [Plaintiff] understand [his] benefits" and that, in the event of conflict between the plan and SPD, "the plan document will always control." (Id. at 1.)

In response, Plaintiff has provided an affidavit in which he states that he has neither seen nor read the plan documents or Benefits Schedule A-1. (Pl.'s 2d Aff. ¶¶ 1-2.) Plaintiff also denies having ever been told about the "any occupation" definition of disability. (Id. ¶ 3.) Nevertheless, he does not dispute receiving the 2003 SPD; nor does he allege that the plan documents were unavailable to him for review.

Given these undisputed facts, the Court concludes that there is no genuine dispute regarding whether Plaintiff could have reasonably relied on the plan's general definition of disability. Plaintiff does not argue that Defendant acted improperly in using Schedule A-1 to amend the plan. Neither does he argue that the plan documents and the SPD were

9

ambiguous, confusing, or contradictory. In fact, the 2003 SPD gave specific notice that an "any occupation" or "any employment" standard would be applied to his application for disability benefits. Consequently, the Court concludes that Defendant properly applied Schedule A-1's definition of disability in accord with the plan and the SPD. For the reasons below, the Court also concludes that Plaintiff's claims lack merit and that Defendant is entitled to judgment as a matter of law.

B. **The Merits of Plaintiff's Claims**

The Eleventh Circuit has provided a multi-step analysis "for use in judicially reviewing virtually *all* ERISA-plan benefit denials." Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1137 (11th Cir. 2004). Williams instructs:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo wrong*," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo wrong*" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

10

> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Id. at 1138. Consequently, under the Eleventh Circuit's binding instructions in Williams, the Court's analysis begins with a *de novo* review.

The record bears little evidence of disability. The only doctor to opine that Plaintiff was "totally disabled" was Dr. Robert L. Brand, M.D., who first examined Plaintiff on April 25, 2005. (See Barger Aff. Ex. B at Davis 94, 96-102.) Yet, Dr. Brand also somewhat contradictorily indicated that Plaintiff could stand or walk 1-3 hours during an 8-hour workday, sit for 5-8 hours during an 8-hour workday, lift up to 10 pounds frequently, use both hands for repetitive grasping, pulling, or pushing, reach above shoulder level with either hand, and occasionally bend. (See id.) Thus, Dr. Brand's opinion seems essentially consistent with those of other doctors who opined that Plaintiff could perform sedentary or light-duty work.

Thus, Plaintiff's case stands or falls not upon evidence of his physical limitations, but upon his argument that he lacks the "education, training, or experience" to perform sedentary work. The problem with this argument is that it fails to address whether Plaintiff can perform unskilled sedentary work. The plan provides that a claimant is only

disabled if he is "incapable of performing *any* occupation or employment." (Barger Aff. Ex. A at 88 (emphasis added).) Given this stringent definition of disability, coupled with Plaintiff's virtually undisputed capacity for a broad range of sedentary work activities, it is difficult to discern any need for vocational evidence or evaluation.

In other words, contrary to Plaintiff's argument, vocational evidence is unnecessary when the evidence of record demonstrates that the claimant is not prevented from performing some identifiable job.[5] As another district court within this circuit has explained:

> While the Eleventh Circuit has not weighed in on the issue, in considering the "any occupation" standard, other Courts of Appeals have held that consideration of vocational evidence is unnecessary where the evidence in the administrative record supports the conclusion that the claimant does not have a disability which prevents him from performing some identifiable job. When, as here, the evidence shows that a claimant is capable of light and sedentary work and the claimant's previous employment was not highly skilled or technical, the plan administrator need not conduct a vocational assessment or consider vocational evidence to determine that the claimant is disabled under the "any occupation" standard.

Hufford v. Harris Corp., 322 F. Supp. 2d 1345, 1359 (M.D. Fla. 2004) (internal citations and quotation marks omitted).

It is clear from the record that Plaintiff is capable of

---

[5]See Caldwell v. Life Ins. Co. of North Am., 287 F.3d 1276, 1290 (10th Cir. 2002); Elliott v. Sara Lee Corp., 190 F.3d 601, 608 (4th Cir. 1999); McKenzie v. Gen. Tel. Co. of California, 41 F.3d 1310, 1317 (9th Cir. 1994); Duhon v. Texaco, Inc., 15 F.3d 1302, 1309 (5th Cir. 1994); Block v. Pitney Bowes Inc., 952 F.2d 1450, 1455 (D.C. Cir. 1992); Potter v. Connecticut Gen. Life Ins. Co., 901 F.2d 685, 686 (8th Cir. 1990).

a wide variety of sedentary jobs. Consequently, the Court cannot conclude that Defendant's decision to deny benefits was wrong, whether reviewed *de novo* or under any other standard of review. Accordingly, Defendant is entitled to summary judgment.

### IV. CONCLUSION

Upon the foregoing, Defendant's motion for summary judgment is **GRANTED**. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendant and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this \_\_\_30\_\_\_ day of March, 2007.

_____
HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE

# CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. § 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S.Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5:** The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD** -- no additional days are provided for mailing. Special filing provisions for inmates are discussed below.

(b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

Rev.: 4/04